In re McCABE.

Patent Appeal No. 3374.

Court of Customs and Patent Appeals.
Jan. 28, 1935.

Langdon Moore, of Washington, D. C. (James Atkins, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office upon two claims of an application for patent relating to electric mercury tube switches.

As finally acted upon by the Examiner, the application contained four claims, numbered respectively, 6, 7, 8, and 9, and all were held by the Examiner to be unpatentable in view of prior art. Upon appeal, the Board of Appeals reversed the Examiner's decision as to claims 6 and 8, but affirmed his rejection of claims 7 and 9. Appellant thereupon appealed to this court from so much of the Board's decision as affirmed the Examiner's rejection.

The rejected claims read as follows:

"7. An electric mercury tube switch including a cylindrical container having a tip-

less closure at one end and having a projecting filling stem with electrodes projecting on each side thereof sealed in the other end with flexible lead wires attached to the projecting electrodes throughout the external portions thereof, the filling stem tipped in line with the termination of the respective electrodes, and means surrounding the electrodes with the attached flexible lead wires, interposed rigid filling stem and end of the tube seal to impart rigidity to the exterior portions of the electrodes to allow the flexing of the lead wires above the ends of the electrodes without exerting a strain on the electrodes."

"9. An electric mercury tube switch including a cylindrical glass container formed with a normally integral closure at one end, a filling stem in the axis of the container and a plurality of leading in wires equidistant from the filling stem sealed in the material of the container at the other end, spaced apart electrodes secured to the respective spaced apart leading in wires, and a relatively heavy body of mercury in relation to the weight of the container. adapted to flow within the container to make and break an electrical circuit between said electrodes, said leading in wires of relatively heavy material to carry current of high intensity and said filling stem tipped on the exterior of the sealed end closure."

Nine references were cited as follows: Piffard, 467,982, February 2, 1892; Whipple, 728,060, May 12, 1903; Housekeeper, 1,271,320, July 2, 1918; Phelan, 1,598,874, September 7, 1926; Walker, 1,607,582, November 16, 1926; Armstrong et al., 1,640,-869, August 30, 1927; Laskey, 1,647,999, November 8, 1927; Walker, 1,721,757, July 23, 1929; Phelan et al., 1,826,570, October 6, 1931.

It is not deemed essential to set forth in detail the disclosures of the many references cited. Certain of them refer to mercury tube switches, while others are in what is designated by the Board of Appeals as the "lamp art."

The specific structure upon which all of appellant's claims are based is that of a tube having a tipless closure at one end, and at the other end a projecting stem, through which the tube is filled with the desired elements; said filling stem located between two electrodes and having leading in wires (that is, wires leading to the electrodes) on each of its sides, said leading in wires being sealed into that end of the tube through which the filling stem projects. There are

also flexible lead wires attached to the aforesaid leading in wires, and, in one of the forms shown, bands of insulating material bind all the leads to the electrodes and to the rigid filling stem. By this arrangement, the Board says, " * * * the lead wires may be flexed without imparting a strain upon the projecting electrodes."

In denying claims 7 and 9, the Board of Appeals correctly pointed out that the patents to Armstrong et al. and Phelan et al. both show means for supporting electrodes in position to cause the flexing of the conductor to occur beyond the joint of connection between electrode and conductor; that the patent to Piffard discloses a sheath for holding the filaments and the electrodes in position with respect to each other, but not with respect to the filling stem, because the latter is located at the other end of the tube; that Laskey, whose patent relates to a switchboard lamp tube, shows a tube tipless at one end and having a filling stem positioned between electrodes at the other end.

The Board then says:

" * * * While this is disclosed in the lamp art it shows the organization broadly and it is believed that claims such as 7 and 9 which merely recite the combination of the filling stem located between the electrodes *without using the stem to support the electrodes against flexing or bending due to pull on the conductors* does not amount to a patentable combination, especially since the organization is old in the lamp art as indicated generally by the Laskey and Piffard patents." (Italics ours.)

One argument presented on behalf of appellant is to the effect that there is no substantial distinction in principle between the allowed claims and those which were rejected; this being particularly urged as to appealed claim 7, supra. Appellant's brief quotes from the decision of the Board respecting the allowed claims as follows:

"Claims 6 and 8 are limited to means for connecting the flexible lead wires and electrodes to the filling stem and as limited in claim 8 to the lead wires surrounding the electrodes and filling the space between the electrodes and the filling stem so that the surrounding means serve to connect the leads and electrodes to the filling stem to thereby impart rigidity to the parts projecting from the sealed end of the tube. These two claims do not appear to be met in the patents or in any combination thereof and in our view are patentable over the references."

The brief then adds:

"It is submitted that the diction above quoted from the decision of the Board reads just as well upon claim 7 as upon the claims referred to therein by the Board."

It must be conceded, we think, that the distinction between the allowed claims and the rejected claims is not expressed by the Board with entire clearness, but, even were they identical in meaning, it would not necessarily follow that the rejected claims should, for that reason, be allowed. It might, indeed, be argued that, if the rejected claims were properly rejected, then the others, if they are the same, should also have been rejected, but we are not concerned with the allowed claims.

However, we think the Board has indicated its idea of the distinction in the italicized clause of the quotation from its decision respecting the rejected claims, supra; that is, the feature of "using the stem to support the electrodes against flexing or bending due to pull on the conductors."

As we understand the Board's decision, it was held that such feature was present in the allowed claims, 6 and 8, and that, same not being shown by the prior art, they were properly allowable, but that, not being present in the rejected claims and the other features thereof being anticipated, the latter were not patentable.

In other words, the Board seems to have made itself more clear as to the feature which rendered the allowed claims patentable by its negative statement in the discussion of the rejected claims than by its affirmative statement relating to those allowed.

■ It may be said, incidentally, that even, if there be no distinction in fact, appellant would not suffer by a failure to have the rejected claims allowed, since his rights are protected by those which are allowed, and the rejection of the others would not constitute reversible error. In re Randell, 67 F.(2d) 931, 21 C. C. P. A. (Patents) 745.

■ We think the issue before us must be determined not by comparing the rejected claims with the allowed claims for points of similarity or dissimilarity, but by a comparison of them with the prior art cited.

When so compared, the several features of the combination seem to us to be shown in the prior art substantially as applicant combines them, as pointed out by the Board, and we are unable to concur in the contention made on behalf of appellant as to certain of

these features being shown in a "nonanalogous" art. It is true that the features so referred to appeared, as the Board says, in the "lamp art," but they relate specifically to the location and sealing of elements designed for the conduction of electric current into glass tubes, or the like, and their functions and purposes in this respect in the art cited are practically identical with the functions and purposes of the like features involved in the appealed claims.

The decision of the Board of Appeals is affirmed.

Affirmed.