Modified.

28 C.C.P.A. (Patents)

In re SCHWARZ.

Patent Appeals No. 4432.

Court of Customs and Patent Appeals.

Feb. 24, 1941.

Charles M. Fryer, of San Francisco, Cal. (Donald M. Wight, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, for lack of patentability over the cited prior art, claims 54, 59, 60, 66 and 67 of appellant's application for a patent. Twenty-five claims were allowed by the examiner, and the board reversed the examiner's rejection of five additional claims, so that thirty claims stand allowed.

Claims 54, 59, and 66 are illustrative and read as follows:

"54. A juice extractor comprising: means to comminute juice-bearing material, means to compress the resulting comminuted material, and means to co-ordinate said compressing means with said comminuting means to compress said material both while and after being subjected to said comminuting means.

"59. The method of extracting juice from juice-bearing material, which comprises treating said material to successive comminuting steps and between comminuting steps removing sufficient juice from the comminuted mass to make remaining solids easily comminutable.

"66. A centrifugal juice extractor comprising: a rotor; a stator about and spaced from said rotor; comminuting means comprising a part on said rotor and a part on said stator; means to move the comminuted material during rotation in a path away from said comminuting means substantially parallel to the axis of rotation; and means to adjust the pressure between said comminuting means and the material being comminuted thereby, comprising means to restrict such movement of the material to create pressure other than the pressure incident to centrifuging and comminuting."

The general subject matter of appellant's application is concisely described in the statement of the examiner as follows: "The subject matter of the rejected claims relates to a device for and a method of extracting juice from fruit. The device comprises a casing with a hopper at the upper end thereof. Within the casing and carried thereby are two or more stationary longitudinally spaced concentric cylindrical screens. Within the screens and mounted to rotate concentric therewith is a rotor. The rotor comprises spaced cylindrical portions corresponding to the number of screens. The cylindrical portions of the rotor have mounted thereon spaced ribs inclined on a gradual spiral. Between the cylindrical portion of the rotor is a conical skirt carrying shredding teeth which co-operate with a stationary grinding burr mounted between the spaced screens. The upper end of the rotor and casing also carries co-operating shredding elements in ad-

vance of the first screen. At the lower end of the last screen is mounted a band which co-operates with a removable bearing plate 19 on the lower extremity of the rotor to form a pulp throat. The size of the throat may be varied by using different sized bearing plates."

The references cited are: Leet, 548,166, October 15, 1895; Dostal, 1,343,439, June 15, 1920; Manning, 1,703,535, February 26, 1929.

While a patent to Steere was relied upon by the examiner in the rejection of claim 54, the board held that this was not a proper reference, and therefore it does not require consideration here. There was also another reference cited, a patent to Lindenberg, but this patent was not relied upon with respect to any of the claims before us.

The patent to Leet relates to a fruit press and discloses three groups of crushing rolls. Above the first group of rolls there is a hopper where the fruit is inserted. The juice extracted through the first crushing step passes through a screen positioned between the first and second group of rolls; the pulp then passes through the second group of rolls where more juice is extracted. This operation is repeated through the third group of rolls, by which time, the patent states, the juices will have been wholly extracted.

The patent to Manning is also for a juice extractor and states: "The present invention contemplates the provision of an apparatus adapted for the continuous expelling of liquids from solids and the simultaneous treating of the expelled liquids. In this apparatus the fruit or other solids is introduced into a disintegrating hopper where it is reduced as desired. After being reduced the separated portions of the solids with contained or expressed liquid are passed into a compression chamber by means of a suitable feeding means or by gravity, where the liquid is almost completely expelled from the pulp solids and is forced through a wall of either stationary or moving treating solids into a filtrate receiver. The pulp solids are passed on through and out of the apparatus by a suitable device. The forcing of the expressed liquid through the wall of treating solids is accomplished by a differential in liquid pressure between the pulp and filtrate sides of the wall which may be due to either a subatmospheric pressure on the filtrate side or mechanical pressure on the pulp side or both."

The patent discloses discharge openings for the solids, the size of which openings may be regulated, so as to create a back pressure in the same manner as in appellant's device, although it is appellant's contention that the pressure created by the restriction in the discharge openings of Manning is not as extensive as the pressure created in appellant's device, and fails to perform one of the functions performed by appellant's discharge opening. This will be further discussed in our separate consideration of the claims.

The patent to Dostal relates to a fruit and vegetable pulping machine. The only reliance placed on this reference by the Patent Office tribunals is its disclosure of a crushing or comminuting mechanism with feeding of the material to be treated along the comminuting means in a path parallel to the axis of the rotor.

With respect to the rejection of claim 54 the Board of Appeals in its decision stated: "Claim 54 has been rejected on Steere, but we believe improperly. We find, however, this claim does not distinguish from Manning. Evidently there is back pressure formed in the use of this Manning device and therefore compression on the material being treated."

In its decision upon a motion for reconsideration the board further stated with respect to claim 54 as follows: "Attention is called to the Manning patent and it is urged the back pressure created by adjustment of sleeve 28 would not extend to the cutters 9 and that may or may not be true. Appellant, in his specification on pages 6 and 7, refers only to holding back the pulp to build up a pressure and allow it to be expelled under desired pressure and that is the purpose of adjustment of sleeve 28 in the patent. We see no particular advantage in producing a back pressure at the point of comminution of the material treated as recited in claim 54. * * *"

It is appellant's contention that Manning does not disclose the last element of the claim providing for means of co-ordinating the first two elements of the claim.

It will be observed that the only reference relied upon by the board for the rejection of this claim is the patent to Manning, the board having disapproved its rejection upon the patent to Steere. Manning discloses no means to co-ordinate his compressing means with his comminuting means to compress his material while being subjected to his comminuting means. It will be further ob-

served that in its decision upon the motion for reconsideration the board stated that it saw no particular advantage in producing a back pressure at the point of comminution of the material treated.

We are in agreement with appellant's contention that pressure upon the material while being comminuted is important. This is recognized in the Manning patent, for it provides for a plate pressed downwardly against the fruit or vegetables by a spring to force them against the graters or crushers.

Appellant does not utilize a spring in his device, and it is his contention that the restricted size of the throat for the discharge of the pulp produces a back pressure extending to the comminuting means.

However, no such claim is made in appellant's specification. Upon this point the specification recites: "The pulp passes from the final stage 23 through a pulp throat 41 between the lower extremity of the rotor and a lower screen band 42. It then drops through the spider 17 to any suitable collector. The passage space of the pulp throat 41 is controlled by the size of the bearing plate 19 so as to hold the pulp back until the required percentage of juice has been extracted. If this pulp throat is relatively narrow, the pulp will be held back to build up a pressure behind the final screen for the extreme extraction of juice."

It will be observed that no mention is made of the pressure extending to the comminuting means, or that pressure is exerted upon the material while being comminuted.

The Solicitor for the Patent Office states that, inasmuch as claim 54 was not an original claim, and there is nothing in the written description of the application disclosing the last element of claim 54, this claim might well have been rejected for want of disclosure in appellant's specification; but the Solicitor does not urge this ground of rejection inasmuch as it was not a ground of rejection by the Patent Office tribunals. Under the rule laid down in the case of In re Tucker & Reeves, 54 F.2d 815, 19 C.C.P.A., Patents, 810, which we have since frequently affirmed, we may not consider upon this appeal any ground of rejection not passed upon by the Board of Appeals.

Therefore we must assume, for the purposes of this case, that appellant's ap-

plication does disclose all of the elements of claim 54, and it is clear to us that the Manning patent does not disclose the last element of this claim; and, there being no contention by the Board of Appeals that this element would be obvious to one skilled in the art, we must reverse the decision of the board with reference to claim 54.

With respect to claims 59 and 60 the Board of Appeals in its decision stated: "Claims 59 and 60 are alleged to distinguish from Leet in reciting successive comminuting steps. While Leet shows crushing steps, we do not believe there is a material distinction between crushing and comminuting as broadly stated. We have observed in claim 60 the reference to comminuting material sufficiently to free juice by opening the juice cells, but insufficiently to obtain too much fine solids in the free juice. However, this does not appear to us to be a patentable distinction over the reference."

Appellant contends that these claims are distinguishable from the Leet patent in that Leet crushes his material, while the claims require that the material be comminuted, and that there is an important difference between comminuting fruit and crushing it.

As one of the definitions of comminute Funk & Wagnalls New Standard Dictionary gives the word "crush"; and the same authority gives as one of the definitions of the word "crush" the following: "To break into bits by pressure; comminute; * * *."

Of course it is clear that certain materials could be crushed without comminuting them, but it is equally clear that fruit put through Leet's device would not only be crushed but comminuted as well.

Appellant further contends that Leet shows drainage of the fruit juice by gravity only, and that such separation of juice from the solids would be incomplete and would not render the solids easily comminutable. He further contends that the only way to accomplish appellant's purpose is to remove the juice by force. If this were true, appellant should have introduced the element of force into the claims. The claims do not call for forcible removal of juice, but merely the removal of it. Leet removes by drainage, and we are not disposed to indulge in scientific speculation as to whether the juice is so held in crushed apples by capillary attraction that force is

necessary to remove a large proportion of juice therefrom, as appellant contends.

We are of the opinion that claims 59 and 60 are not patentably distinguishable from the Leet reference.

We repeat that if forcible removal of the juice, as distinguished from drainage, is necessary to accomplish appellant's purpose, the claims should have so provided. Indeed many of the allowed claims do contain the element of a particular kind of force, viz., centrifugal force.

With respect to claims 59 and 60 appellant contends that the allowance of claim 61 is evidence that these claims are patentable. The rule is well established that patentability of a claim may not be determined by comparing it with allowed claims. In re McCabe, 74 F.2d 758, 22 C.C.P.A., Patents, 877. However, we would observe that allowed claim 61 has limitations not found in claims 59 and 60, and presumably claim 61 was allowed by reason of such limitations.

With regard to claims 66 and 67 the Board of Appeals in its decision stated: "Claims 66 and 67 stand rejected on Manning in view of Dostal. We note in this connection there is a general reference to centrifuging but no antecedent basis therefor in the body of the claims. We interpret the claims to call for comminuting means with feeding of the material to be treated in a path along the comminuting means parallel to the axis of rotation and means to adjust the pressure between the comminuting means and the material. As above explained, Manning discloses the last means recited and Dostal discloses comminuting means and feeding the material comminuted in a movement axially of the rotor. To combine these features, in our opinion, is lacking in patentable merit."

It will be observed that Manning was cited as disclosing that element of these claims reading: "means to adjust the pressure between said comminuting means and the material being comminuted thereby." We cannot find that Manning discloses this element. While his device provides for means to adjust the compression on the material being treated after comminution, it does not provide for any such adjustment between the comminuting means and the material being comminuted thereby.

Manning's comminuting means is above his compression screw, and it seems clear to us that any pressure due to the size of his pulp discharge throat would not be effective between the comminuting means and the material being comminuted thereby.

For the reasons hereinbefore stated, the decision appealed from is affirmed with respect to claims 59 and 60, and is reversed with respect to claims 54, 66, and 67.

Modified.